# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1111
_____

United States of America

*Plaintiff - Appellee*

v.

Stevon Warren

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 15, 2012
Filed: November 2, 2012
[Unpublished]

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

A jury found Stevon Warren guilty of one count of interstate transportation to engage in prostitution in violation of 18 U.S.C. § 2421 and one count of sex

trafficking of a minor in violation of 18 U.S.C. § 1591. The district court[1] sentenced him to 46 months imprisonment on the first count and 132 months imprisonment on the second count, to be served concurrently. Warren challenges his convictions on both counts, arguing that (1) the evidence was not sufficient to find he transported an individual with the intent she engage in prostitution and (2) the evidence was not sufficient to show he transported a minor knowing she would be caused to engage in a commercial sex act. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm.

I.

At trial, witness Larisha Duncan testified she lived in Minnesota and was a prostitute who regularly purchased drugs from Warren. Duncan testified that when she told Warren she was a prostitute in 2004 or 2005, he expressed interest in splitting her earnings. Duncan testified that in May 2008, she moved into a house her mother was renting from Warren. After that time, Warren generally knew when Duncan went to prostitution appointments and how much she earned from those appointments because he was often present when Duncan scheduled her prostitution appointments, drove her to the appointments, or asked her how much she was earning from the appointments. Duncan referred to these appointments as "dates" throughout her testimony. Duncan testified that Warren sometimes paid for her to post online ads and book hotel rooms for her prostitution services, and that he started demanding she give him all her prostitution earnings in exchange for drugs. On several occasions when Duncan failed to give Warren all her prostitution earnings, he either beat her or withheld drugs.

---

[1]The Honorable Patrick J. Schiltz, United States District Court for the District of Minnesota.

-2-

Duncan testified that in November 2008, she called Warren and asked him to drive her from Minnesota to Wisconsin for a "date." Warren drove her to the appointment as requested.

Duncan testified that on March 18, 2009, she called Warren and asked him to drive her to a "date" in a Minneapolis hotel. Warren did so. When Warren returned to pick her up after the "date," Duncan told him they had to pick up her 15-year-old sister, C.D., and go back to the hotel later that evening because "the guy wanted a younger girl." Duncan testified she told Warren the client would pay $900 for the evening, and Warren responded C.D. could keep $200 or $300 but that he would keep the rest. Duncan testified that later that evening as Warren drove her to pick up C.D., Duncan called C.D. in Warren's presence and arranged with C.D. for C.D. to perform oral sex for the client. Duncan said C.D. "wanted all the money" from the job and Duncan told her she could have it, despite Warren's demands that Duncan tell C.D. that C.D. could only keep $200 or $300. Duncan testified they picked up C.D. and then Warren drove them back to the hotel for the "date."

C.D. testified at trial that during the drive to the hotel with Warren, she and Duncan agreed that C.D. would give the client a "massage," Duncan would "do everything else," and C.D. could leave "if at any point [she did not] feel cool about it." C.D. said Duncan "was going to do . . . anything that was physical sex, oral sex. I was just supposed to be . . . the massager, preview." C.D. testified she understood this to mean she would give the client "a full body massage and naked, clothes off." C.D. admitted at trial that she previously lied to the grand jury, testifying there that she was only going to give a back massage, because she "was really, really embarrassed about it; I mean, I still am."

Unbeknownst to Duncan, the client was an undercover police officer. Duncan and C.D. were taken into custody shortly after arriving at the hotel, and Warren was arrested at a nearby gas station.

"We review sufficiency of the evidence de novo . . . ." United States v. Close, 518 F.3d 617, 619 (8th Cir. 2008). "[W]e view the evidence in the light most favorable to the jury's verdicts, draw all reasonable inferences in favor of those verdicts, and reverse only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." United States v. Vanover, 630 F.3d 1108, 1116 (8th Cir. 2011) (internal quotation marks omitted). "Our role is not to reweigh the evidence or to test the credibility of the witnesses, because questions of credibility are the province of the jury." Id. (internal quotation and alteration marks omitted).

Viewed in the light most favorable to the jury's verdict, the evidence was sufficient to support both of Warren's convictions. First, a defendant violates 18 U.S.C. § 2421 if he "knowingly transports any individual in interstate commerce . . . with intent that such individual engage in prostitution . . . ." See 18 U.S.C. § 2421. Warren does not dispute he knowingly drove Duncan from Minnesota to Wisconsin. Rather, he argues the evidence was insufficient to prove he intended for Duncan to engage in prostitution. However, Duncan testified Warren not only knew she was a prostitute, but also often paid for her ads and hotel rooms, was present when she scheduled her "dates," demanded she give him her prostitution earnings, and drove her to "dates," including the March 18, 2009, prostitution appointment. "Each element of a crime, including intent, may be proven by circumstantial evidence." United States v. Jones, 16 F.3d 275, 278 (8th Cir. 1994). Duncan's testimony regarding Warren's general knowledge and involvement with her prostitution activities was sufficient to establish he intended she engage in prostitution when he drove her from Minnesota to Wisconsin for a prostitution "date" on March 18, 2009.

Second, a defendant violates 18 U.S.C. § 1591 if he "knowingly . . . transports" a person "knowing, or in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex

act . . . ." See 18 U.S.C. § 1591. Warren does not dispute on appeal that he transported C.D. or that he knew she was a minor. Rather, Warren argues the evidence was insufficient to prove he knew C.D. would be caused to engage in a commercial sex act[2] since C.D. testified Duncan told her she only had to give a "massage," Duncan "would do everything else," and C.D. could leave "if at any point [she did not] feel cool about it." However, Duncan testified Warren overheard her arrange for C.D. to perform oral sex, and C.D. admitted she previously lied about the evening because she felt embarrassed. Credibility determinations are the province of the jury, see Vanover, 630 F.3d at 1116, and a reasonable jury could have credited Duncan's testimony over C.D.'s, especially since C.D. admitted she was still "really, really embarrassed" about the evening. Moreover, Duncan told Warren the client "wanted a younger girl" and was willing to pay $900 for the evening. A reasonable jury could have concluded Warren knew C.D. ultimately would be caused to engage in a commercial sex act, even if Duncan and C.D. discussed a "massage" in the car.

III.

Accordingly, we affirm.

_____

---

[2]The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).